

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DERIK L MAPLES,

                    Petitioner,

     v.

MARGARET GILBERT

                    Respondent.

CASE NO. 3:16-CV-05209-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: FEBRUARY 24, 2017

Petitioner Derik Lee Maples seeks 28 U.S.C. § 2254 habeas relief from his 2011 state court conviction by jury verdict for second-degree felony murder and first-degree assault, both while armed with a firearm. Dkt. 9; Dkt. 17, Exhibit 10. Petitioner was sentenced to consecutive prison terms totaling 456 months. Dkt. 17, Exhibit 10.

Petitioner seeks habeas relief on grounds that the murder victim, Clement Adams, participated in the predicate felony of delivery of controlled substances and that the assault victim, Tyshaun Foreman, never appeared at trial. Petitioner's challenge to the application or interpretation of state law regarding the participation in delivery of controlled substances does

not present a cognizable federal habeas claim. In addition, the record clearly shows that there was sufficient evidence to support petitioner's conviction and that petitioner's due process rights were not violated. Petitioner's right to confront Foreman was not violated because Foreman never testified at trial and any statements by the detectives who interviewed Foreman were not testimonial. Petitioner failed to raise his remaining fifth ground for relief at all levels of the state court, and, thus, ground five is unexhausted and procedurally barred.

Thus, the Court recommends denying grounds 1, 2, 3, and 4 and dismissing ground 5 as unexhausted and procedurally barred. In the alternative, if the Court decides to review the merits of ground five, the undersigned recommends denying ground five. The undersigned also recommends denying the issuance of a certificate of appealability.

## BACKGROUND

Petitioner raises five grounds for relief: (1) whether he was denied his right to confront Foreman, the assault victim; (2) whether the jury instruction relieved the state of its burden to prove each element of felony murder; (3) whether there was sufficient evidence to support the felony murder conviction; (4) whether there was sufficient evidence to support the first-degree assault conviction; and (5) whether the introduction of cell phone calls and messages between petitioner and Foreman violated petitioner's rights under the Confrontation Clause. Dkt. 9.

In his original answer, respondent only addressed petitioner's first four grounds for relief. Dkts. 16, 17. The Court ordered respondent to file a supplemental answer addressing petitioner's fifth ground for relief. Dkt. 19. Respondent argues that grounds 1, 2, 3, and 4 fail on the merits, and ground 5 is unexhausted and procedurally barred. Dkts. 16 (original answer), 17, 20 (supplemental answer). Petitioner filed a reply to respondent's original answer. Dkt. 18. After respondent submitted his supplemental answer, petitioner filed two supplemental replies. Dkts.

21, 22. The Court considered these supplemental replies a request for an extension, and granted petitioner until January 20, 2017 to file any additional materials or arguments in support of his petition. Dkt. 23. To date, petitioner has not filed any additional documents and the Court will consider both supplemental replies. Dkts. 21, 22.

## BASIS FOR CUSTODY AND FACTS

The Washington Court of Appeals summarized the facts in petitioner's case as follows:

On December 1, 2009, Aaron Scott called Maples and asked if he would sell cocaine to some of Scott's friends, Clement Adams and Tyshaun Foreman. Maples agreed and obtained $300 of cocaine from Alex Velasquez. While at Velasquez's, Maples mentioned that Scott and his friends were acting "funny" and had called Maples from a restricted number. 5 Report of Proceedings (RP) at 780. Maples asked his friend, Justin Tyler, to come with him to the sale. Tyler agreed and asked Velasquez for a gun. Maples said that he thought the gun was for "protection" and "to make sure that nothing went wrong." 6A RP at 840.

Maples agreed to meet Scott's friends at the S & S Mart in Vancouver. When Maples and Tyler arrived, Maples got into the back seat of a waiting car with Adams and Foreman. He gave the passenger, Foreman, a baggie of cocaine and Foreman attempted to give him counterfeit cash in exchange. Maples protested and attempted to retrieve the cocaine. Adams acted like he was going to hit Maples, so Maples jumped out of the car and said, "They robbed me." 6A RP at 844. Tyler then fired five shots at the car, one of which hit Adams in the head, killing him. Maples and Tyler fled.

The State charged Maples with (1) first degree murder or, in the alternative, second degree felony murder and (2) first degree attempted murder or, in the alternative, first degree assault. Before trial, the State made a motion in limine to prohibit Maples from arguing that Adams was a participant in the underlying felony, delivery of a controlled substance. It argued that a drug buyer is not an accomplice under Washington case law. The trial court did not make a clear ruling at that point, instead telling Maples, "I'm not trying to eliminate your ability to put your theory before the ... jury .... But, I think you need to be in conformity with what the State is saying about the use of the term 'participant.'" 2 RP at 231. The trial court admitted that this "doesn't give you a whole lot of direction." 2 RP at 231-32. The State then suggested that the issue could be clarified when the parties discussed jury instructions, and the trial court agreed.

The trial court later instructed the jury that "[a] 'participant' in a crime is a person who is involved in committing that crime, either as a principal or as an accomplice" and that "[a] purchaser of controlled substances is not an accomplice

1
2

in the crime of delivery of a controlled substance." CP at 224-25. Maples did not object to either instruction at trial.

3

The jury found Maples guilty of second degree murder and first degree assault and it returned a special verdict finding that he or an accomplice was armed with a firearm at the time of both crimes. The trial court sentenced him to a total of 456 months of confinement.

4

5

Dkt. 17, Exhibit 14 (unpublished opinion), at 2-3.

6

7

### STATE PROCEDURAL HISTORY

8

Through counsel, petitioner appealed to the Washington Court of Appeals. Dkt. 17,

9

Exhibits 11, 12. Petitioner raised three grounds for relief: (1) denial of a fair trial; (2) insufficient

10

evidence of the felony murder count because the decedent was a participant in the underlying

11

felony; (3) insufficient evidence of the assault count because petitioner was not an accomplice to

12

the person who committed the crime. *Id.* at Exhibit 11. Petitioner also submitted a *pro se*

13

statement of additional grounds for review and argued that his Sixth Amendment right to

14

confront his accuser was violated when Tyshaun Foreman did not appear as a witness at trial.

15

Dkt. 17, Exhibit 12. On December 10, 2013, the Washington Court of Appeals denied

16

petitioner's appeal in an unpublished opinion. *Id.* at Exhibit 14.

17

Through counsel, petitioner sought review in the Washington Supreme Court. Dkt. 17,

18

Exhibit 15.  Petitioner raised two grounds for relief: (1) whether the buyer in an illegal drug

19

transaction is a "participant" in the seller's delivery under the felony murder rule and (2) whether

20

an objection to a trial court's ruling on a motion in limine that precludes the presentation of a

21

valid defense preserves the error for appeal. *Id.* The Washington Supreme Court denied review

22

without comment *Id.* at Exhibit 16. The Court of Appeals issued its mandate on March 12, 2014.

23

*Id.* at Exhibit 17.

24

Petitioner, proceeding *pro se,* filed a collateral attack of his sentence – his personal restraint petition. Dkt. 17 at Exhibit 18. Petitioner raised three grounds for relief: (1) violation of confrontation clause when Foreman did not testify at trial; (2) insufficient evidence to support the assault conviction; and (3) jury instructions 19 and 20 were improper. *Id.* The Washington Court of Appeals dismissed the petition on May 19, 2015. Dkt. 17, Exhibit 21. The court declined to revisit petitioner's confrontation claim and challenge to the trial court's jury instructions as those claims had been determined on direct appeal. *Id.* at 2-3. The court rejected petitioner's insufficiency of the evidence claim on the merits. *Id.* at 3-6.

Petitioner moved for discretionary review and raised the same three grounds he had presented in his personal restraint petition. Dkt. 17, Exhibit 22. The Washington Supreme Court denied the motion through a ruling by the commissioner. Dkt. 17, Exhibit 23. The Washington Supreme Court concluded that petitioner's insufficiency of the evidence claim was without merit. *Id.* at 2-3. The Washington Court of Appeals issued a certificate of finality on December 23, 2015. Dkt. 17, Exhibit 24.

## EVIDENTIARY HEARING

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise

1  precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see*

2  *also Cullen,* 131 S. Ct. 1388 (2011). "[A]n evidentiary hearing is not required on issues that can

3  be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th

4  Cir. 1998).

5    Petitioner's habeas claims raise only questions of law and may be resolved by a review of

6  the existing state court record. Therefore, the Court finds it unnecessary to hold an evidentiary

7  hearing.

**DISCUSSION**

9    A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

10  merits in the state courts unless the adjudication either: (1) resulted in a decision that was

11  contrary to, or involved an unreasonable application of, clearly established federal law, as

12  determined by the Supreme Court; or (2) resulted in a decision that was based on an

13  unreasonable determination of the facts in light of the evidence presented to the state courts.  28

14  U.S.C. § 2254(d).  Further, a determination of a factual issue by a state court shall be presumed

15  correct, and the applicant has the burden of rebutting the presumption of correctness by clear and

16  convincing evidence.  28 U.S.C. § 2254(e)(1).

17    Petitioner presents the Court with five grounds for relief:

18    1. Whether petitioner was denied his right to confront the alleged assault victim,
19  Tyshaun Foreman, because Foreman did not appear as a witness at trial.

20    2. Whether jury instruction 20 relieved the state of its burden proving each
element of felony murder when it instructed the jury that a purchaser of controlled
21  substances is not an accomplice in the crime of delivery of a controlled substance.

22    3. Whether there was sufficient evidence to support petitioner's felony murder
conviction because the decedent was a participant in the crime.

23    4. Whether there was insufficient evidence to support the first-degree assault
24  conviction because Foreman did not testify.

1

2      5. Whether the introduction of cell phone calls and messages between petitioner
       and the assault victim violated petitioner's rights under the Confrontation Clause.

3   Dkt. 9.

4        Respondent concedes that petitioner exhausted claims 1, 2, 3, and 4, however, respondent

5   argues that these claims fail on the merits. Dkt. 20.[1] Respondent argues claim 5 is unexhausted

6   and procedurally barred. Dkt. 20.

7       **A. Ground One: Confrontation Clause Violation**

8        In his first claim for federal habeas relief, petitioner argues that the trial court's rulings

9   denied him the Sixth Amendment right to confront and cross-examine assault victim, Tyshaun

10  Foreman.  Dkt. 9 at 5. Respondent argues that petitioner's Sixth Amendment rights were not

11  violated because Foreman was not a witness against petitioner at trial. Dkt. 20.

12       The Confrontation Clause bars "admission of testimonial statements of a witness who did

13  not appear at trial unless he was unavailable to testify, and the defendant ... had a prior

14  opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53–54 (2004); *Davis*

15  *v. Washington,* 547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses'

16  against the accused, i.e., those who 'bear testimony.'" *Crawford,* 541 U.S. at 51 (citation

17  omitted); *Davis,* 547 U.S. at 823–24. "'Testimony,' in turn, is typically a solemn declaration or

18  affirmation made for the purpose of establishing or proving some fact." *Crawford,* 541 U.S. at 51

19  (citation and some internal punctuation omitted); *Davis,* 547 U.S. at 824. The *Davis* court

20  explained:

21       [a] critical portion of [*Crawford's* ] holding ... is the phrase "testimonial
         statements." Only statements of this sort cause the declarant to be a "witness"

22  ───────────────────────

23       [1] The Court will refer to the supplemental answer (Dkt. 20) as respondent included an analysis of all
    grounds for relief.

24

within the meaning of the Confrontation Clause. *It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.*

*Davis,* 547 U.S. at 821 (citation omitted) (emphasis supplied). Thus, nontestimonial statements do not implicate the Confrontation Clause. *Giles v. California,* 554 U.S. 353, 376 (2008). The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59 n. 9. Additionally, a Confrontation Clause violation is subject to harmless error analysis. *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986). A Confrontation Clause violation is harmless, and does not justify habeas relief, unless it had substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993).

"Although *Crawford* did not define 'testimonial' or 'nontestimonial,' it made clear that the Confrontation Clause was concerned with 'testimony,' which 'is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,' and noted that '[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.'" *Delgadillo v. Woodford,* 527 F.3d 919, 927 (9th Cir. 2008) (quoting *Crawford,* 541 U.S. at 51). A statement is "testimonial" if its declarant knew, or should have known, that its primary utility was to provide evidence of the defendant's unlawful conduct for use in his prosecution or a criminal investigation into past events. *See Williams v. Illinois,* 567 U.S. 50 (2012) ("The abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (a) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions."); *Melendez–Diaz v.*

*Massachusetts,* 557 U.S. 305 (2009) (opining that a statement is "testimonial" if it was made for an "evidentiary purpose" and "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial") (internal citation and quotation marks omitted).

The State intended to call Foreman, the assault victim, as a witness during its case-in-chief, Dkt. 17, Exhibit 9 at 109, 118, 121, however, the State was unable to locate Foreman before trial. Foreman had been released from the Oregon State Penitentiary to the Multnomah County Jail on June 30, 2011 and then disappeared; his whereabouts were unknown. *Id.* at 111. On October 5, 2011, the State moved for a material witness warrant to compel Foreman's attendance at trial, *id.* at 116 (material witness warrant), which was granted by the trial court, *id.* at 115 (order for material witness warrant, setting bail in the amount of $100,000). On the first day of trial, October 10, 2011, the trial court authorized the issuance of a no-bail material witness warrant. *Id.* at 143. Foreman was not arrested on the warrant. *See* Dkt. 17, Exhibit 2.

In light of Foreman's absence, the State moved for a two-week continuance. Dkt. 17, Exhibit 2 at 206-09. Defense counsel opposed the State's continuance, stating that Foreman's testimony or lack thereof "would not make the case dispositive" and that petitioner wished for trial to proceed as scheduled. *Id.* at 211. The trial court denied the continuance. *Id.* at 211-12. The case proceeded without Foreman's testimony. *See* Dkt. 17, Exhibit 2.

At trial, Detectives John Ringo and Lawrence Zapata testified that they had spoken with Foreman during their investigation. Detective Ringo testified that when he spoke with Foreman, Foreman stated that he had been in the car, was part of the drug transaction, and fled after the shooting and car crash. Dkt. 17, Exhibit 6 at 867. Detective Zapata testified that

1   Foreman provided the police with information that "propelled the investigation." Dkt. 17,

2   Exhibit 5 at 717-18.

3          The Washington Court of Appeals rejected petitioner's argument that his Sixth

4   Amendment right to confrontation was violated:

5          The Sixth Amendment to the United States Constitution guarantees the right of an
           accused in a criminal prosecution to confront witnesses against him. *State v.*
6          *Parris*, 98 Wn.2d 140, 144, 654 P.2d 77 (1982) (citing *Davis v. Alaska*, 415 U.S.
           308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)). "The main and essential
7          purpose of confrontation is to secure for the opponent the opportunity of cross
           examination." *Parris*, 98 Wn.2d at 144. Here, although Foreman did speak with
8          police after the shooting, the State did not attempt to introduce any of his
           statements. Therefore, Foreman was not actually a witness against Maples and
9          Maples's rights were not violated by Foreman's failure to appear at trial.

10         Further, the Sixth Amendment protects defendants from government interference
           with the right to conduct a defense. *State v. McCabe*, 161 Wn. App. 781, 787, 251
11         P.3d 264 (2011). Accordingly, a defendant's Sixth Amendment rights are not
           violated where "the obstacle to a defendant's getting what he perceives as the full
12         benefit of his Sixth Amendment right is not government interference, but an
           uncooperative witness." *McCabe*, 161 Wn. App. at 787. Here, Maples's inability
13         to confront Foreman was not due to any action or failure to act by the State or the
           trial court; rather, it was due to Foreman's lack of cooperation. In fact, the State
14         obtained a material witness warrant for Foreman, but it could not locate him.
           Maples's argument fails.

15  Dkt. 17, Exhibit 14 at 11.

16         In denying discretionary review of petitioner's personal restraint petition, the

17  Washington Supreme Court stated:

18         Mr. Maples first contends that his right of confrontation was violated because the
19         alleged first degree assault victim, Tyshaun Foreman, did not appear or testify at
           trial. Mr. Maples raised this issue on direct appeal by way of pro se statement of
20         additional grounds for review. The Court of Appeals examined the issue on the
           merits and determined that no confrontation clause violation occurred. In
21         particular, the court noted that Mr. Foreman was not a testifying witness in the
           case and the State did not seek to admit any statements by him. *See State v.*
22         *Parris,* 98 Wn.2d 140, 144, 654 P.2d 77 (1982) (primary purpose of confrontation
           is to facilitate cross-examination.) And the court noted that Mr. Foreman's
23         absence was the result of his failure to cooperate with law enforcement, not
           government action. *See State v. McCabe,* 161 Wn. App. 781, 787, 251 P.3d 264

24

1   (2011) (no Sixth Amendment violation based on uncooperative witness). Here,
    Mr. Maples fails to show that the interests of justice require reexamination of the
2   issue. *See In re Pers. Restraint of Yates,* 177 Wn.2d 1, 17, 296 P.3d 872 (2013)
    (argument rejected on the merits on direct appeal will not be reconsidered in
3   personal restraint petition unless required in the interests of justice).

4   Dkt. 17, Exhibit 23 at 2.

5       The record clearly reflects that petitioner was not deprived of the opportunity to

6   "confront" Foreman.  First, to label Foreman a witness "against" petitioner ignores the fact that

7   Foreman did not testify at all. Moreover, the detectives' testimony as to the out-of-court

8   statements made by Foreman that he was in the car, part of the drug transaction, and fled after

9   the shooting were not admitted to prove the truth of the matter asserted. Rather, they were

10  offered for the non-hearsay purpose of explaining how the investigation was conducted. *See* Dkt.

11  17, Exhibit 5 at 717-18, Exhibit 6 at 867. The State presented this testimony to explain how the

12  detectives identified Foreman as one of the men inside the vehicle, and how the investigation had

13  progressed. *See id.*  The record does not show that Foreman's out-of-court statements identified

14  or inculpated petitioner and the testimony was not offered to prove that petitioner assaulted

15  Foreman. *But see Ocampo v. Vail,* 649 F.3d 1098,1111 (9th Cir. 2011) (Admission of detectives'

16  testimony concerning declarant's out-of-court statements, which had confirmed defendant's

17  presence at the scene of the crime and that defendant was the shooter, constituted the

18  introduction of testimonial statements against defendant in violation of Confrontation Clause

19  where declarant did not testify, and thus was not subject to cross-examination, and state court

20  admitted the critical substance of declarant's testimonial statements against defendant, albeit not

21  in verbatim form).

22      And even if the statements were testimonial hearsay, any error in admitting the evidence

23  was harmless. First, none of the information contained in the detectives' out-of-court statements

24

REPORT AND RECOMMENDATION - 11

1    pertained to petitioner. Second, even without the admission of Foreman's out-of-court

2    statements, there was no dispute as to whether Foreman or petitioner were in the car and

3    involved in the drug transaction.  *See* Dkt. 17, Exhibits 5 and 6. Accordingly, the Court does not

4    find that the admission of the detectives' testimony regarding Foreman's statements had a

5    "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht,* 507

6    U.S. at 623.

7         There is no clearly established Supreme Court precedent that would have required the

8    trial court to proceed in a different manner. The decision of the Washington Court of Appeals

9    on this issue was neither contrary to, nor an unreasonable application of, clearly established

10   Supreme Court precedent.  The state court's decision is entitled to deference under 28 U.S.C. §

11   2254(d), and the undersigned recommends that this claim for federal habeas relief be denied.

12   **B.  Ground Two: Jury Instruction 20 – Elements of Crime and State's Burden**

13        In his second ground for relief, petitioner argues that Jury Instruction No. 20 relieved the

14   state of its burden to prove every element of the offense of second-degree felony murder beyond

15   a reasonable doubt.  Dkt. 9 at 8. Petitioner argues the trial court erred in finding that Adams was

16   not a participant in the predicate felony. *Id.* Respondent contends ground two fails on the merits.

17   Dkt. 20.  Respondent also points out that petitioner did not object during trial to Jury Instruction

18   No. 20. *Id.*; Dkt. 17, Exhibit 6 at 912.

19        Under Washington law,

20        A person is guilty of murder in the second degree when:… (b) He or she commits
          or attempts to commit any felony, including assault, other than those enumerated
21        in RCW 9A.32.030(1)(c), [pertaining to first degree felony murder] and, in the
          course of and in furtherance of such crime or in immediate flight therefrom, he or
22        she, or another participant, causes the death of a person other than one of the
          participants[.]"

23   RCW 9A.32.050(1)(b).

24

1    Jury Instruction No. 20 stated: "[a] purchaser of controlled substances is not an

2  accomplice in the crime of delivery of a controlled substance." Dkt. 17, Exhibit 9 at 225. The jury

3  also received a "to-convict" instruction for the second-degree felony murder charge which

4  incorporated the elements of RCW 9A.32.050(1)(b). Jury Instruction No. 21 stated:

5    To convict the defendant of the crime of murder in the second degree, each
     of the following elements of the crime must be proved beyond a reasonable doubt:

6

7    (1) That on or about December 1, 2009, the defendant committed or attempted to
         commit Delivery of a Controlled Substance – Cocaine;

8    (2) That the defendant or an accomplice caused the death of Clement Adams in
         the course of and in furtherance of such crime or in immediate flight from
         such crime;

9    (3) That Clement Adams was not a participant in the crime of Delivery of a
         Controlled Substance – Cocaine; and

10   (4) That any of these acts occurred in the State of Washington.

11    If you find from the evidence that each of these elements has been proved
     beyond a reasonable doubt, then it will be your duty to return to a verdict of

12   guilty.

13    On the other hand, if, after weighing all of the evidence, you have a
     reasonable doubt as to any one of these elements, then it will be your duty to

14   return a verdict of not guilty.

15

16  Dkt. 17, Exhibit 9 at 226 (Instruction 21); *See also id.* at 218 (Instruction 13) (definition

17  of second-degree felony murder); *id.* at 224 (Instruction 19) (definition of participant in a

18  crime).

19    The Washington Court of Appeals rejected petitioner's claim that Jury Instruction

20  No. 20 misstated the requirements of state law:

21    Maples first argues that the trial court violated his due process rights when it
     refused to allow him to argue that Adams was a participant in the felony

22   underlying the murder charge. The distinction is critical because, as this case was
     charged, the State was required to prove that the victim was not also a participant

23   in the underlying crime, delivery of a controlled substance. Because Washington
     case law holds that a controlled substances buyer is not an accomplice to the

24   crime of delivery of a controlled substance, we affirm the trial court.

…

A person is guilty of second degree murder when he commits or attempts to commit any felony and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants. RCW 9A.32.050(l)(b). Here, the underlying felony was delivery of a controlled substance. Generally, a "participant" is "another person involved in the crime—i.e., another principal or accomplice." *State v. Toomey*, 38 Wn. App. 831, 840, 690 P.2d 1175 (1984). But Washington case law has determined that a controlled substances buyer—such as Adams—is not an accomplice to delivery. *State v. Morris*, 77 Wn. App. 948, 954-55, 896 P.2d 81 (1995) (interpreting the delivery of a controlled substance statute and holding that a buyer cannot be charged with delivery of a controlled substance, even as an accomplice); *State v. Warnock*, 7 Wn. App. 621, 623, 501 P.2d 625 (1972) (reasoning that, since a buyer cannot be charged with delivery, he cannot, therefore, be an accomplice to delivery); *State v. Catterall*, 5 Wn. App. 373, 376, 486 P.2d 1167 (1971) (noting that the legislature intended to treat buyers and sellers differently and holding that a buyer is not an accomplice to delivery of a controlled substance).[2] Relying on this case law, the trial court instructed the jury that a controlled substances buyer is not an accomplice to the crime of delivery of a controlled substance.

Using the courts' logic in *Catterall* and *Warnock*, it follows that Adams was not a "participant," i.e., a principal or accomplice, in the delivery of a controlled substance. We noted in *Warnock* that "'[t]he test in this state as to whether a witness is an accomplice or not is whether he could be indicted for the same crime for which the defendant is being tried.'" 7 Wn. App. at 623 (quoting *State v. Emmanuel*, 42 Wn.2d 799, 821, 259 P.2d 845 (1953)). In *Catterall* we stated, "The abettor, within the meaning of the statute, must stand in the same relation to the crime as the criminal—approach it from the same direction, touch it at the same point." 5 Wn. App. at 378 (quoting *State v. Teahan*, 50 Conn. 92, 101 (1882)). Adams could not have been indicted for delivery of a controlled substance. *See Morris*, 77 Wn. App. at 951 ("The person who takes control does not 'transfer' or 'deliver[,]' but accepts the transfer or delivery."). As a buyer, he did not "stand in the same relation to the crime" as the seller Maples or "approach it from the same direction." *Catterall*, 5 Wn. App. at 378 (quoting *Teahan*, 50

---

[2] [state court footnote] *Catterall* involved offense under the repealed Dangerous Drug Act, but this court held in *Warnock* that the result would be the same under both the Dangerous Drug Act and the Uniform Controlled Substances Act because both punish possession separately from delivery. 7 Wn. App. at 622-23. Divisions 1 and 2 have held that the "purchaser-agent distinction" did not survive the repeal of the Dangerous Drug Act. *See State v. Ramirez*, 62 Wn. App. 301, 308-09, 814 P.2d 227 (1991); *State v. Sherman*, 15 Wn. App. 168, 170, 547 P.2d 1234 (1976). But those cases involved "procuring agents" rather than ultimate buyers. *Ramirez*, 62 Wn. App. at 308-09; *Sherman*, 15 Wn. App. at 170. Here, Adams did not deliver or transfer the cocaine, he only received the cocaine. Accordingly, these facts are most similar to *Morris* where we held that a buyer is not an accomplice to delivery. 77 Wn. App. at 954.

Conn. at 101). Although Adams's and Maples's intents were compatible—each needed the other to accomplish their respective goal—their intents were not the same.

Maples contends that the felony murder rule was designed to protect innocent persons and Adams was not innocent in this case. But Washington has applied the felony murder statute to situations where the victim was not an innocent party. For example, felony murder victims who were involved in fights that ultimately led to their deaths are not considered "participants" in the underlying assault. *See State v. Brigham*, 52 Wn. App. 208, 210, 758 P.2d 559 (1988); *State v. Langford*, 67 Wn. App. 572, 579–80, 837 P.2d 1037 (1992). Similarly, here, Adams was involved in the drug deal, but he was not an accomplice to the underlying felony, delivery of a controlled substance. Therefore, the trial court did not err when it instructed the jury that a controlled substance buyer is not an accomplice to delivery.

Dkt. 17, Exhibit 14 at 4-6.

Also, the fact that a jury instruction is "allegedly incorrect under state law is not a basis for" granting habeas corpus relief. *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Indeed, "[o]utside of the capital [punishment] context," the Supreme Court has "never said that the possibility of a jury misapplying state law gives rise to federal constitutional error." *Gilmore v. Taylor,* 508 U.S. 333, 342 (1993) (instructions containing errors of state law may not form basis for federal *habeas corpus* relief). "[S]tate courts are the ultimate expositors of state law," and federal courts "are bound by their constructions except in extreme circumstances." *Mullaney v. Wilbur,* 421 U.S. 684, 691 n. 11 (1975) ("On rare occasions the Court has reexamined a state-court interpretation of state law when it appears to be an 'obvious subterfuge to evade consideration of a federal issue.' ") (citation omitted).

Federal courts, therefore, "do not grant relief ... simply because the instructions may have been deficient" in some way. *Estelle,* 502 U.S. at 72. Rather, the sole question for consideration is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," and "not merely that the instruction is undesirable, erroneous, or even

1  'universally condemned.' " *Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973); *see also Estelle,*

2  502 U.S. at 72; *Henderson v. Kibbe,* 431 U.S. 145,153 (1977).

3        "Even if there is some ambiguity, inconsistency, or deficiency" in the instruction, such an

4  error does not necessarily constitute a due process violation. *Waddington v. Sarausad,* 555 U.S.

5  179, 190 (2009) (internal quotation marks and citations omitted). Rather, the defendant must

6  show both that the instruction was ambiguous and that there was a reasonable likelihood that the

7  jury applied the instruction in a way that relieved the State of its burden of proving every

8  element of the crime beyond a reasonable doubt. *Id. See Middleton v. McNeil,* 541 U.S. 433, 437

9  (2004) ("In a criminal trial, the State must prove every element of the offense, and a jury

10  instruction violates due process if it fails to give effect to that requirement.").

11        The Court first notes that although petitioner disagrees with the state court's

12  interpretation of Washington case law that Adams was not an accomplice because he was not a

13  buyer or deliverer, on federal habeas review, the state court's determination on the interpretation

14  of state law is binding on the federal court. *See Bradshaw,* 546 U.S. at 76. Petitioner's due

15  process claim is also without merit because other instructions in the jury charge also made it

16  clear that a guilty verdict requires proof beyond a reasonable doubt. Thus, this Court cannot find

17  that there is a reasonable likelihood that the jury applied the instruction in such a way that the

18  state was relieved of proving every element beyond a reasonable doubt or that the entire trial was

19  so infected resulting in a conviction that violates due process. *See Waddington,* 555 U.S. at 190;

20  *Middleton*, 541 U.S. at 437. The state court's rejection of petitioner's jury instruction claim was

21  neither contrary to, nor an unreasonable application of clearly established federal law for

22  purposes of 28 U.S.C. § 2254(d)(1).  The undersigned recommends that ground two be denied.

23

24  **C.  Grounds Three and Four: Insufficient Evidence**

1    In his third ground for relief, petitioner argues that there was insufficient evidence to

2  support a guilty verdict of second-degree felony murder because Adams was a participant in the

3  crime of delivery of controlled substances. Dkt. 9. In his fourth ground for relief, petitioner

4  argues that there was insufficient evidence to support the first-degree assault conviction because

5  Foreman did not testify at trial. *Id.*  Both claims were rejected by the Washington appellate

6  courts.

7    When evaluating a claim of insufficiency of the evidence to support a conviction, the

8  question is not whether the Court itself believes the evidence establishes guilt.  "Instead, the

9  relevant question is whether . . . any rational trier of fact could have found the essential elements

10  of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

11  (emphasis in original); *Wright v. West*, 505 U.S. 277, 284 (1992).  The Court must "view the

12  record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d

13  610, 612 (9th Cir.), *cert. denied*, 489 U.S. 1077 (1990).  The constitutional sufficiency of

14  evidence review is sharply limited.  *Wright*, 505 U.S. at 296.  The jury is entitled to believe the

15  State's evidence and disbelieve the defense's evidence.  *Id.*

16    Although federal courts look to state law for the substantive elements of the criminal

17  offense, the minimum amount of evidence that the Due Process Clause requires to prove the

18  offense is purely a matter of federal law.  *See Coleman v. Johnson*, __ U.S. __, 132 S. Ct. 2060,

19  2064 (2012) (per curiam); *Jackson*, 443 U.S. at 324 n. 16.  It is exceedingly difficult for a

20  petitioner to demonstrate insufficiency of the evidence on federal habeas review:

21    *Jackson* claims face a high bar in federal habeas proceedings because they are
     subject to two layers of judicial deference.  First, on direct appeal, "it is the
22    responsibility of the jury—not the court—to decide what conclusions should be
     drawn from evidence admitted at trial.  A reviewing court may set aside the jury's
23    verdict on the ground of insufficient evidence only if no rational trier of fact could
     have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, __, 132 S. Ct. 2, 4

24

1   (2011) (*per curiam*).  And second, on habeas review, "a federal court may not
2   overturn a state court decision rejecting a sufficiency of the evidence challenge
    simply because the federal court disagrees with the state court.  The federal court
3   instead may do so only if the state court decision was 'objectively unreasonable.'"
    *Ibid.* (quoting *Renico v. Lett*, 559 U.S., __, __, 130 S. Ct. 1855, 1862 (2010).

4   *Coleman*, 132 S. Ct. at 2062.

5        Washington's test for determining the sufficiency of evidence is identical to that set forth

6   by the Supreme Court in *Jackson*.  In Washington, evidence is sufficient if after viewing the

7   evidence in the light most favorable to the state, any rational trier of fact could have found guilt

8   beyond a reasonable doubt.  *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980).  When

9   the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from

10  the evidence must be drawn in favor of the State and interpreted most strongly against the

11  defendant.  *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977).

12       i.      *Ground Three  - Insufficient Evidence of Second-Degree Felony Murder Against*
                 *Adams*

13

14       As respondent points out, it appears that petitioner's third ground for relief merely

15  reasserts his claim that the Washington state courts incorrectly applied state law. As stated above

16  with respect to ground two, federal habeas relief is unavailable for violations of state law or for

17  alleged errors in the interpretation or application of state law. *See Estelle,* 502 U.S. at 67–68.

18       To the extent that ground three can be interpreted as a claim of insufficient evidence, the

19  Washington Court of Appeals held that there was sufficient evidence to conclude that a rational

20  trier of fact could find that all elements of second-degree felony murder had been proven beyond

21  a reasonable doubt. Dkt. 17, Exhibit 2 at 6-8.

22       Evidence is legally sufficient to support a guilty verdict if any rational trier of
         fact, viewing the evidence in the light most favorable to the State, could find the
         elements of the charged crime beyond a reasonable doubt. *State v. Longshore,*
23       141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable
         inferences in the State's favor. *State v. Hosier,* 157 Wn.2d 1, 8, 133 P.3d 936
24       (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga,*

1    151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the
2    trier of fact and are not subject to review. *State v. Cantu,* 156 Wn.2d 819, 831,
     132 P.3d 725 (2006).

3    First, Maples argues that there is insufficient evidence that Adams was not a
     participant in the crime of delivery of a controlled substance. As discussed
4    above, a buyer is not an accomplice to delivery of a controlled substance. Maples
     argues several facts that show Adam's involvement in the drug deal; however,
5    none of these facts establish that Adams was acting as the seller or deliverer
     rather than the buyer. Therefore, there is sufficient evidence that Adams as not a
6    participant.

7    Dkt. 17, Exhibit 2 at 6-7.

8         At trial, the State played a video recording of petitioner's interview with Detectives

9    Zapata and Ringo. Exhibit 5, at 746-96; Exhibit 6, at 803-62.  During the interview, petitioner

10   described his involvement in the attempted drug transaction in Adams' car that ultimately led to

11   the shooting. *Id.* Petitioner stated he agreed to meet Scott's friends, Adams and Foreman, to sell

12   them the cocaine. Dkt. 17, Exhibit 5 at 774-780. During the exchange, petitioner gave Foreman

13   the cocaine and Foreman attempted to give petitioner counterfeit cash in exchange. *Id.* at 779.

14   Petitioner then stated Adams acted as if he was going to hit him, so petitioner jumped out of the

15   car, saying that he was robbed. Dkt. 17, Exhibit 6 at 844. Petitioner never disputed these facts.

16   *See* Dkt. 17, Exhibits 5 and 6.

17        After viewing the evidence in the light most favorable to the prosecutor and assuming the

18   jury resolved all conflicts in a manner that supports the verdict, the Court finds that a rational

19   trier of fact could have inferred that Adams was not acting as the seller or deliverer, essential to

20   find that Adams was a participant in the underlying felony. Thus, the state court's conclusion

21   that these circumstances, when considered together, were sufficient to support the guilty verdict

22   and was not objectively unreasonable based on the evidence presented at trial.

23        ii.    *Ground Four – Insufficient Evidence of Assault Against Foreman*

24

1    With respect to ground four, the key question is whether or not the state court's finding

2 was reasonable that there was sufficient evidence to support petitioner's conviction of first-

3 degree assault of Foreman. Petitioner does not clearly or with any detail articulate his theory for

4 this claim and only argues that Foreman did not appear at trial and was not subject to cross-

5 examination. *See* Dkt. 9. However, as respondent notes, in petitioner's personal restraint petition,

6 petitioner argued that the evidence was insufficient because Foreman did not testify at trial and

7 thus, there was no evidence of an assault. Dkt. 20 at 16 (citing Dkt. 17, Exhibit 18 at 12-14).

8    The Washington Court of Appeals rejected petitioner's claim:

9
10
11
12

> Maples does not dispute that Tyler fired five shots into the driver's side of the car specifically intending to inflict great bodily harm on the driver. Although Tyler may not have known of Foreman's presence, an assault may be committed by putting another in apprehension of harm, even if the actor does not intend to inflict harm. … Therefore, under *Elmi*, Tyler—and, through accomplice liability, Maples—bore the risk of assault convictions for any passengers in the car, whether or not they knew of their presence.

13 Dkt. 17, Exhibit 14, at 10.

14    And further, the state court held that there was sufficient evidence from which the jury

15 could conclude that petitioner acted as an accomplice to Tyler's assault of Foreman under RCW

16 9A.08.020:

17
18
19
20

> Tyler was present at the drug deal only because Maples asked him to be. Maples knew that Tyler had a gun, and, in fact, Tyler brought the gun because Maples was concerned about the buyers' behavior and wanted some protection. Additionally, after Foreman attempted to pay with counterfeit money, Maples got out of the car and told Tyler that he had just been robbed. It was reasonable for the jury to infer that this was a request for Tyler to act.

*Id.* at 10-11.

21    In denying review of petitioner's personal restraint petition, the Washington

22 Supreme Court stated:

23

24

REPORT AND RECOMMENDATION - 20

1   Mr. Maples next argues that there was insufficient evidence to convict him of first
2   degree assault because there was no evidence of an "assault" based on Mr.
    Foreman being placed in apprehension of harm by Mr. Maples or his accomplice.
3   When reviewing the sufficiency of the evidence, this court views the evidence in a
    light most favorable to the State to determine whether it permits a rational jury to
    find the essential elements of the crime beyond a reasonable doubt. *State v.*
4   *Thomas,* 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Under this deferential
    standard, Mr. Maples admits the truth of the State's evidence and all reasonable
5   inferences drawn therefrom. *Id.* And the court will not reweigh evidence, resolve
    conflicting testimony, or question the jury's credibility determinations. *Id.* at 874-
6   75; *see also State v. Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

7   An assault may be committed by (1) unlawful touching (actual battery); (2) an
    attempt by unlawful force to inflict bodily harm on another person, tending by
8   failing to accomplist it (attempted battery); and (3) placing another person in
    apprehension of harm. *State v. Elmi,* 166 Wn.2d 209, 215, 207 P.3d 439 (2009).
9   The evidence here showed that Mr. Maples accomplice fired five shots into the
    driver's side of a car in which Mr. Foreman was a passenger, killing the driver.
10  The shooter's intent to inflict great bodily harm on the driver transferred to the
    unscathed passenger, Mr. Foreman. *Elmi,* 166 Wn.2d at 218. Thus, the evidence
11  was sufficient to support the first degree assault conviction.

12  Dkt. 17, Exhibit 23 at 2-3.

13          After viewing the evidence in the light most favorable to the prosecutor and assuming the

14  jury resolved all conflicts in a manner that supports the verdict, the Court finds that a rational trier

15  of fact could have inferred that as Tyler's accomplice, petitioner placed Foreman in apprehension

16  of harm – essential for a conviction of assault.  Thus, the state court's conclusion that these

17  circumstances, when considered together, were sufficient to support the guilty verdict and was not

18  objectively unreasonable based on the evidence presented at trial.

19          Accordingly, the Court concludes that petitioner has failed to show that the state courts'

20  adjudication of this claim was contrary to, or an unreasonable application of clearly established

21  federal law and recommends that federal habeas relief on grounds three and four be denied.

22      **D. Ground 5 – Violation of Confrontation Clause Related to Cell Phone Evidence
         Between Maples and Foreman**

23          *i.      Exhaustion*

24

1    Petitioner argues that the trial court violated his rights under the Confrontation Clause

2    when it admitted evidence of cell phone traffic between Maples' cell phone and Foreman's cell

3    phone. Dkt. 9 at 5; Dkt. 18 at 2. Respondent argues that petitioner failed to exhaust ground five

4    because petitioner never presented the claim to the Washington Supreme Court. Dkt. 20 at 3. This

5    Court agrees.

6    A state prisoner seeking habeas corpus relief in federal court must exhaust available state

7    relief prior to filing a petition in federal court. *See* 28 U.S.C. § 2254. As a threshold issue the

8    court must determine whether or not petitioner has properly presented the federal habeas claims

9    to the state courts. 28 U.S.C. § 2254(b)(1) states, in pertinent part:

10       (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
         pursuant to the judgment of a state court shall not be granted unless it appears
11       that:
         (A) the applicant has exhausted the remedies available in the courts of the state;
12       or
         (B)(i) there is an absence of available state corrective process; or (ii)
13       circumstances exist that render such process ineffective to protect the rights of
         the applicant.
14
     28 U.S.C. § 2254 (b).
15
16   Claims for relief that have not been exhausted in state court are not cognizable in a

17   federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).  A petitioner must

18   properly raise a habeas claim at every level of the state courts' review.  *See Ortberg v. Moody*,

19   961 F.2d 135, 138 (9th Cir. 1992).  "[S]tate prisoners must give the state courts one full

20   opportunity to resolve any constitutional issues by invoking one complete round of the State's

21   established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *See*

22   *also Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).  A complete round of the state's established

23   review process includes presentation of a petitioner's claims to the state's highest court. *James*,

24   24 F.3d at 24.

1    "Fair presentation" requires that the prisoner alert the state courts to the fact that he is

2    asserting claims under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365

3    (1995). The prisoner must specifically characterize his claims as federal claims, either by

4    referencing specific constitutional provisions or by citing to relevant federal case law. *Lyons v.*

5    *Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended*, 247 F.3d 904 (9th Cir. 2001).

6    Petitioner raised ground five in his *pro se* statement of additional grounds on direct appeal.

7    Dkt. 17, Exhibit 12 ("In trial the State introduced evidence believed to be Mr. Foremen's [sic],

8    being his cell phone records, showing calls from his phone to a phone believed to be me.").

9    Petitioner did not include any confrontation clause claim in his petition for review before the

10   Washington Supreme Court. Dkt. 17, Exhibit 15.

11   In his personal restraint petition, petitioner only argued that Foreman did not show up for

12   trial, *see* ground one *supra.* Dkt. 17, Exhibit 18 at 4-9 ("Maples was not given the opportunity to

13   question or cross-examine the person purported to be victim of the very crime for which Maples

14   was on trial. As a result, this Court must find that Maples' right to confront his accuser was

15   clearly violated and that this error was not harmless beyond a reasonable doubt."). Petitioner did

16   not reference the introduction of the cell phone records. *See id.* Petitioner also failed to refer to the

17   cell phone evidence in his reply brief. Dkt. 17, Exhibit 20. Similarly, in his motion for

18   discretionary review before the Washington Supreme Court, petitioner raised a confrontation

19   clause claim because Foreman did not appear at trial but did not mention the cell phone evidence.

20   Dkt. 17, Exhibit 22 at 2-5.

21   Although petitioner exhausted ground one, his confrontation clause claim with respect to

22   whether Foreman appeared at trial, he did so based on factual allegations other than those

23   asserted in his fifth ground for relief. Because, petitioner did not specifically raise the issue of the

24

1  cell phone evidence before the Washington Supreme Court, he failed to exhaust ground five at

2  every level of appeal in Washington state court. *See Ortberg*, 961 F.2d at 138. *See also*

3  *Anderson,* 459 U.S. at 6–7; *Gray,* 518 U.S. at 162–63 (stating that "for purposes of exhausting

4  state remedies, a claim for relief in habeas corpus must include reference to a specific federal

5  constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.");

6  *Kelly v. Small,* 315 F.3d 1063, 1067–69 (9th Cir. 2003) (finding ineffective assistance of counsel

7  and prosecutorial misconduct claims unexhausted when specific instances of ineffectiveness and

8  misconduct asserted in federal petition were neither in the California Supreme Court petition nor

9  discussed by the Court of Appeals); *Cofsky v. Schriro*, 2009 WL 733869, at *45 (D. Ariz. Mar.

10 19, 2009), *aff'd sub nom. Cofsky v. Ryan,* 509 F. App'x 625 (9th Cir. 2013) (finding judge's

11 failure to recuse claim as unexhausted because the petitioner failed to raise the claim on the same

12 factual allegations and legal theory on federal habeas review).

13       ii.       *Procedural Bar*

14       Respondent argues that petitioner's fifth claim is procedurally barred under RCW

15 10.73.090. Dkt. 20 at 4. The procedural default concept is distinct from exhaustion in the habeas

16 context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The exhaustion doctrine

17 applies when the state court has never been presented with an opportunity to consider a

18 petitioner's claims and that opportunity may still be available to the petitioner under state law.

19 28 U.S.C. § 2254(c). In contrast, the procedural default rule bars consideration of a federal claim

20 when it is clear that the state court has been presented with the federal claim but declined to

21 reach the issue for procedural reasons or it is clear that the state court would hold the claims

22 procedurally barred. *Franklin v. Johnson*, 290 F.3d at 1230-31. If a petitioner's claims are

23

24

procedurally barred under state law, they are deemed to be procedurally defaulted for purposes of federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Under Washington law, a defendant may not collaterally challenge a conviction more than one year after the conviction becomes final. RCW 10.73.090(1). *See also Aguilar v. Washington*, 77 Wn. App. 596, 603 (1995) (applying Washington's one-year time limit as a mandatory bar). If a prisoner files a direct appeal of his conviction and sentence, "then the judgment is final when the appellate court issues its mandate 'disposing of the direct appeal.'" *In re Skylstad*, 160 n.2d 944, 948-49 (2007) (*quoting* RCW 10.73.090(3)(b)). Petitioner's conviction became final for purposes of state law on March 12, 2014. Dkt. 17, Exhibit 17. Because more than one year has passed since petitioner's conviction became final, ground five is now time-barred in state court.

The default will be excused and a petitioner will be entitled to federal habeas corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (*citing Coleman*, 501 U.S. at 750).

Here, petitioner has not alleged any facts that establish cause or prejudice or a fundamental miscarriage of justice. Petitioner simply did not raise ground five under federal law at all levels of the state court. Because petitioner cannot excuse his procedural default, ground five is not cognizable in the habeas corpus proceeding and should therefore be dismissed.

//

   iii.  *Merits – Ground Five*

1      Although this Court recommends that ground five be dismissed because petitioner failed

2 to exhaust the claim, this is a close question as petitioner did raise a Confrontation Clause issue

3 with regard to Foreman's appearance at trial, which was exhausted in the Washington state

4 courts. Thus, the Court will also evaluate the merits of ground five.

5      Petitioner contends that his rights under the Sixth Amendment's Confrontation Clause

6 were violated when the trial court admitted evidence of a cell phone call between him and

7 Foreman. Dkt. 9. Respondent argues that even if petitioner exhausted ground five, it fails on the

8 merits. Dkt. 20.

9      Petitioner's cell phone was seized during his arrest on December 4, 2009. Dkt. 17,

10 Exhibit 3 at 427-32. Several days later, the cell phone was submitted for forensic evaluation. *Id.*

11 Foreman's cell phone was recovered from the crime scene shortly after the incident. *Id.* at 317-

12 18. Eric Thomas, a computer digital forensics investigator, testified at trial about the data

13 extracted from petitioner's and Foreman's cell phones. Dkt. 17, Exhibit 5 at 631-42. Mr. Thomas

14 testified that there was no data on petitioner's phone prior to December 2, 2009. *Id.* at 644-48.

15 Mr. Thomas also testified that there was one phone call between petitioner and Maples on

16 December 1, 2009. *Id.* at 641, 659. The content of the cell phone conversation was not presented

17 at trial. *See id.* at 631-42. The defense objected to Mr. Thomas' testimony on the basis of

18 hearsay, *id.* at 637, but the objection was overruled, *id.* at 637-38.

19      As discussed above with respect to ground one, the state courts rejected petitioner's

20 argument that his Sixth Amendment right to confrontation was violated. Dkt. 17, Exhibit 14 at

21 11; Dkt. 17, Exhibit 23 at 2. However, the state courts did not address petitioner's allegation

22 that the cell phone calls and messages between him and Foreman violated his rights under the

23 Confrontation Clause.  *See id.*

24

1          To determine whether the admission of the cell phone record between petitioner and

2    Foreman is subject to the Confrontation Clause, the Court must first determine whether it is

3    testimonial. The Supreme Court has deemed testimonial statements as those made to the police

4    during an interrogation and a written statement provided to the police in a non-emergency.

5    *Crawford,* 541 U.S. at 52, and *Davis,* 547 U.S. at 828–29. "[A] business or public record is not

6    'testimonial' due to 'the mere possibility' that it could be used in a later criminal prosecution."

7    *Morales,* 720 F.3d at 1200 (citing *United States v. Orozco–Acosta,* 607 F.3d 1156, 1164 (9th

8    Cir. 2010)). "Rather, such records are testimonial only if there is some showing that the

9    primary purpose of the record is for use in litigation." *Id.* As explained in *Melendez–Diaz:*

10   "Business and public records are generally admissible absent confrontation not because they

11   qualify under an exception to the hearsay rules, but because–having been created for the

12   administration of an entity's affairs and not for the purpose of establishing or proving some fact

13   at trial–they are not testimonial." 557 U.S. at 324; *accord United States v. Morales,* 720 F.3d

14   1194, 1200 (9th Cir. 2013). *See United States v. Yeley–Davis,* 632 F.3d 673, 679–80 (10th Cir.

15   2011) (finding neither cell phone records, nor document authenticating those records

16   testimonial; cell phone records were " 'created for the administration of [Verizon's] affairs and

17   not for the purpose of establishing or proving some fact at trial' " and the purpose of the

18   authenticating documents "was merely to authenticate the cell phone records –and not to

19   establish or prove some fact at trial") (quoting *Melendez–Diaz,* 557 U.S. at 324). *See also U.S.*

20   *v. Anekwu,* 695 F.3d 967, 974–76 (9th Cir. 2012) (following the reasoning in *Yeley–Davis* and

21   finding certifications of business records not testimonial where they were "(1) created at or

22   near the time of the events they purported to establish, by someone with knowledge of those

23

24

REPORT AND RECOMMENDATION - 27

1   events; (2) kept in the course of regularly conducted business; (3) made as part of that

2   business's regular practice; and (4) true and correct copies.").

3        A record is not testimonial based solely on the fact that it was provided to the police.

4   Here, there is no basis to conclude that the cell phone record and associated testimony were

5   testimonial and implicated petitioner's rights under the Confrontation Clause.

6        In addition, even assuming a constitutional error, such error was harmless. The cell

7   phone records did support the State's argument that a phone call was exchanged between

8   petitioner and Foreman prior to the attempted drug sale, but petitioner also admitted this fact in

9   his interview with the detectives. Petitioner told Detectives Zapata and Ringo that he had

10  spoken with the passenger in Adams' car, who petitioner referred to as "Cuz." Dkt. 17, Exhibit

11  5 at 778-79. Thus, even without the cell phone records, the evidence showed that petitioner had

12  spoken to Foreman to set up the drug exchange.

13       If the Court chooses to review the merits of petitioner's fifth ground for relief, then the

14  undersigned concludes that petitioner has failed to show that the state appellate courts'

15  adjudication of this claim was contrary, to or an unreasonable application of clearly established

16  federal law and recommends that federal habeas relief on this claim be denied.

17  **E.  Certificate of Appealability**

18       A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

19  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

20  (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

21  has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

22  2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

23  disagree with the district court's resolution of his constitutional claims or that jurists could

24

conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

certificate of appealability with respect to this petition.

**CONCLUSION**

Thus, the undersigned recommends denying grounds 1, 2, 3, and 4 and dismissing ground

5 as unexhausted and procedurally barred. In the alternative, if the Court decides to review the

merits of ground five, the undersigned recommends denying ground five. The undersigned also

recommends denying the issuance of a certificate of appealability.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit

imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

**February 24, 2017** as noted in the caption.

Dated this 31st day of January, 2017.

J. Richard Creatura
United States Magistrate Judge